**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SANDEE'S BAKERY, d/b/a SANDEE'S CATERING BAKERY & DELI AND GNEMI, LLC d/b/a LOGAN FARMS, | Civil No. 1:20-cv-02295 |
| Plaintiffs, | Hon. Virginia M. Kendall Hon. Gabriel A. Fuentes |
| v. | |
| AGRI STATS, INC., et al., | |
| Defendants. | |

<u>**LONG-FORM SETTLEMENT AGREEMENT BETWEEN COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS AND TYSON FOODS**</u>

THIS SETTLEMENT AGREEMENT, ("Settlement Agreement") is made and entered into as of the 8th day of June 2021 ("Execution Date") by and between the Commercial and Institutional Indirect Purchaser Plaintiffs ("CIIPPs"),[1] through Putative Interim Co-Lead Counsel (as hereinafter defined) for the proposed Settlement Class (as hereinafter defined), and Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc. and the Hillshire Brands Company and all of their predecessors, successors, assigns, and Affiliates (as hereinafter defined) (including without limitation any affiliates who are alleged co-conspirators); and any and all past, present, and future parents, owners, subsidiaries, divisions, departments (collectively referred to as "Settling Defendant" or "Tyson") in the above-captioned action (the "Action"). CIIPPs, on behalf

---

[1] As used herein, "CIIPPs" means Sandee's Bakery and Gnemi, LLC.

of the Settlement Class, and Tyson are referred to herein collectively as the "Parties" or individually as a "Party."

WHEREAS, CIIPPs on behalf of themselves and as representatives of the putative class of similarly situated persons or entities allege in the Action, among other things, that Tyson participated in a conspiracy — with other Defendants and alleged non-Defendant co-conspirators in the Action — from at least January 1, 2010 to January 1, 2017 to fix, raise, maintain, and stabilize the price of Turkeys (as hereinafter defined);

WHEREAS, Putative Interim Co-Lead Counsel seek to represent, on an interim basis, the putative class of commercial and institutional indirect purchasers of Turkey (as hereinafter defined);

WHEREAS, the Parties wish to resolve all claims asserted and all claims that could have been asserted against Tyson in any way arising out of or relating in any way to the CIIPPs' purchases of Turkey (as hereinafter defined) produced, processed, or sold by Tyson or any of the Defendants or their alleged co-conspirators;

WHEREAS, counsel for the Parties have engaged in arm's-length negotiations, including mediation with a nationally recognized and highly experienced mediator, on the terms of this Settlement Agreement, and this Settlement Agreement embodies all of the terms and conditions of the settlement;

WHEREAS, CIIPPs have concluded, after preliminary investigation of the facts and after considering the circumstances and the applicable law, that it is in the best interests of CIIPPs to enter into this Settlement Agreement with Tyson to avoid the uncertainties of further complex litigation, and to obtain the benefits described herein for the Settlement Class (as hereinafter

defined), and, further, that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of CIIPPs and the Settlement Class;

WHEREAS, CIIPPs and Putative Interim Co-Lead Counsel believe that the Settlement Fund (as hereinafter defined) reflects fair, reasonable and adequate compensation for the Settlement Class (as hereinafter defined) to release, settle, and discharge their claims that they were overcharged by the alleged anticompetitive conduct of which Tyson is accused; and

WHEREAS, Tyson, notwithstanding its belief that it has legitimate defenses to any claims that could be asserted by CIIPPs against it, enters into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation, and thereby put a rest to this controversy;

WHEREAS, CIIPPs, notwithstanding their belief that they would ultimately prevail at trial and establish liability of Tyson for the conspiracy they have alleged, enter into this Settlement Agreement to avoid the costs, expenses, and uncertainties of this complex litigation; and

WHEREAS, both Parties wish to preserve all arguments, defenses and responses to all claims in the Action, including any arguments, defenses and responses to any proposed litigation class proposed by CIIPPs in the event this Settlement does not obtain Final Approval;

NOW THEREFORE, in consideration of the foregoing, the terms and conditions set forth below, and other good and valuable consideration, it is agreed by and among the Parties that the claims of the CIIPPs be settled, compromised, and dismissed on the merits with prejudice as to Tyson subject to Court approval and that Tyson be forever fully discharged and released from any and all claims covered by this Settlement Agreement:

1.    General Definitions.  The terms below and elsewhere in this Settlement Agreement with initial capital letters shall have the meanings ascribed to them for purposes of this Settlement Agreement.

a.    "Action" means the putative class action filed by CIIPPs in the above-captioned proceeding.

b.    "Affiliate" means with respect to any person, entity or company, a person, entity, or company that directly or indirectly controls, is controlled by or is under common control with such person, entity or company.

c.    "Turkey" means turkey meat, which may be sold in a variety of forms, including fresh or frozen, ground or parts, and raw or cooked.  "Turkey" includes, but is not limited to: breasts, wings, drums, legs, thighs, tenderloins, necks, tails, gizzards, feet, trim, tenders, mechanically separated turkey ("MST"), ground turkey, and further processed and value added turkey products.  Turkey includes, but is not limited to, products containing turkey such as lunch meat, deli meat, sausage, franks, bacon, and corn dogs.

d.    "Complaint" means the CIIPPs' Second Amended Class Action Complaint (ECF No. 133).

e.    "Court" means the United States District Court for the Northern District of Illinois and the Honorable Virginia M. Kendall and the Honorable Gabriel A. Fuentes or their successors, or any other court in which the Action is proceeding.

f.    "Defendants" means those Defendants named in CIIPPs' Complaint.

g.    "Escrow Account" means the escrow account established with the escrow agent to receive and maintain funds contributed by Tyson for the benefit of the Settlement Class.

h.    "Escrow Agreement" means that certain agreement between the escrow agent that holds the Settlement Fund and CIIPPs (by and through Interim Co-Lead Counsel) pursuant to which the Escrow Account is established and funded for the benefit of the Settlement Class, as set forth in Paragraphs 8 and 9 below.

i.    "Fairness Hearing" means a hearing by the Court to determine whether the Settlement Agreement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

j.    "Final Approval" means an order and judgment by the Court which finally approves this Settlement Agreement, including all of its material terms and conditions without modification, and the settlement pursuant to Federal Rule of Civil Procedure 23 and dismisses Tyson with prejudice from the Action.

k.    "Final Judgment" means the first date upon which both of the following conditions shall have been satisfied: (a) Final Approval; and (b) either (1) no appeal or petition to seek permission to appeal the Court's Final Approval has been made within the time for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty days after entry of the order of Final Approval; or (2) if any timely appeals from the Final Approval or notices of appeal from the Final Approval are filed, (i) the date

of final dismissal of all such appeals or the final dismissal of any proceeding on certiorari or otherwise, or (ii) the date the Final Approval is finally affirmed on appeal and affirmance is no longer subject to further appeal or review.

l.      "Putative Interim Co-Lead Counsel" means Cuneo Gilbert & LaDuca, LLP and Barrett Law Group, P.A., as appointed by the Court on an interim basis to represent the putative class of commercial and institutional indirect purchasers of Turkey.

m.     "Preliminary Approval" means an order by the Court to preliminarily approve this Settlement Agreement pursuant to Federal Rule of Civil Procedure 23.

n.     "Released Claims" shall have the meaning set forth in Paragraph 14 of this Agreement.

o.     "Releasing Party" or "Releasing Parties" shall refer individually and collectively to CIIPPs, the Settlement Class, and all members of the Settlement Class, including the CIIPPs, each on behalf of themselves and their respective predecessors, successors, and all of their respective past, present and future (i) direct and indirect parents, subsidiaries, associates and Affiliates, (ii) agents, officials acting in their official capacities, legal representatives, agencies, departments, commissions and divisions, and (iii) shareholders, partners, directors, officers, owners of any kind, principals, members, agents, employees, contractors, insurers, heirs, executors, administrators, devisees, representatives; the assigns of all such

persons or entities, as well as any person or entity acting on behalf of or through any of them in any capacity whatsoever, jointly and severally; and also means, to the full extent of the power of the signatories hereto to release past, present and future claims, persons or entities acting in a private attorney general, qui tam, taxpayer or any other capacity, whether or not any of them participate in this Settlement Agreement.

p.  "Settlement Administrator" means the firm retained to disseminate the Settlement Class Notice and to administer the payment of Settlement Funds to the Settlement Class, subject to approval of the Court.

q.  "Settlement Class" means the class defined in Paragraph 5 below, excluding all persons who file a valid request for exclusion from the Settlement.

r.  "Settlement Class Notice" means any notice sent to the Settlement Class pursuant to Preliminary Approval or otherwise approved by the Court pursuant to Federal Rule of Civil Procedure 23.

s.  "Settlement Class Period" means January 1, 2010 until January 1, 2017.

t.  "Settlement Fund" means $1,750,000 (one million, seven hundred and fifty thousand U.S. dollars), the amount Tyson shall pay or cause to be paid into an interest-bearing Escrow Account maintained by an escrow agent on behalf of the Settlement Class, pursuant to Paragraphs 8 and 9 below, as well as any interest accruing within such interest-bearing Escrow Account.

u.  "Tyson Released Parties" means Tyson (as defined above) together with any and all of Tyson's past, current, and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities,

Affiliates, associates, divisions, joint ventures, predecessors, successors and each of their respective past or present, direct or indirect, officers, directors, trustees, partners, managing directors, shareholders, managers, members, attorneys, equity holders, agents, beneficiaries, executors, insurers, advisors, assigns, heirs, legal or other representatives. Notwithstanding the foregoing, "Tyson Released Parties" does not include any Defendant other than Tyson named by CIIPPs in the Action, either explicitly or as a third-party beneficiary.

2. <u>The Parties' Efforts to Effectuate this Settlement Agreement</u>. The Parties will cooperate in good faith and use their best efforts to seek the Court's Preliminary Approval and Final Approval of the Settlement Agreement.

3. <u>Litigation Standstill</u>. CIIPPs shall cease all litigation activities against Tyson in the Action except to the extent expressly authorized in this Agreement. Tyson and its counsel shall cease all litigation activities against CIIPPs in the Action, except in connection with defending the depositions provided for in Paragraph 10(a) below. None of the foregoing provisions shall be construed to prohibit CIIPPs from seeking appropriate discovery from non-settling Defendants or Co-Conspirators or any other person other than Settling Defendant.

4. <u>Motion for Preliminary Approval</u>. No later than fourteen (14) days after the Execution Date, CIIPPs will move the Court for Preliminary Approval of this Settlement. A reasonable time in advance of submission to the Court, the papers in support of the motion for Preliminary Approval shall be provided by Putative Interim Co-Lead Counsel to Tyson for its review. Putative Interim Co-Lead Counsel shall have final authority to determine the content of the motion for Preliminary Approval and related papers. To the extent that Tyson objects to any

aspect of the motion, it shall communicate such objection to Putative Interim Co-Lead Counsel and the Parties shall meet and confer to resolve any such objection. The Parties shall take all reasonable actions as may be necessary to obtain Preliminary Approval and certification of the Settlement Class for settlement purposes.

5.    Certification of a Settlement Class. As part of the motion for Preliminary Approval of this Settlement, CIIPPs shall seek, and Tyson shall take no position with respect to,[2] appointment of Putative Interim Co-Lead Counsel as Settlement Class Counsel for purposes of this Settlement and certification in the Action of the following Settlement Class for settlement purposes only:

> All commercial and institutional purchasers in the United States and its territories that purchased turkey, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of turkey, from January 1, 2010 to January 1, 2017. Excluded from the Nationwide Class are the Court and its personnel, and any Defendants and their parent or subsidiary companies.

6.    Settlement Class Notices. After Preliminary Approval, and subject to approval by the Court of the means for dissemination:

a.    Individual notice of this settlement shall be mailed, emailed, or otherwise sent by the Settlement Administrator, at the direction of Putative Interim Co-Lead Counsel, to potential members of the Settlement Class, in conformance with a notice plan to be approved by the Court.

b.    Neither the Settlement Class, Putative Interim Co-Lead Counsel, nor Tyson shall have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or

---

[2] By agreeing not to object to the proposed Settlement Class and appointment of Co-Lead Counsel as Settlement Class Counsel, Tyson is not waiving any rights, arguments or defenses and Tyson expressly preserves all such rights, arguments and defenses including with respect to any situation where the Settlement Agreement is not approved in all material respects by the Court

obtaining approval of the settlement or administering the settlement. Such fees, costs, or expenses shall be paid solely from the Settlement Fund, subject to any necessary Court approval.

c.    Tyson shall not object to Putative Interim Co-Lead Counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $250,000 to pay the costs for notice and for Preliminary Approval and Final Approval of this Settlement Agreement.

d.    Putative Interim Co-Lead Counsel shall use best efforts to send out notice to the Settlement Class within 45 days of Preliminary Approval by the Court of the Settlement Agreement, unless otherwise agreed. Reasonable costs of notice that CIIPP counsel are permitted to withdraw from the Settlement Fund, either pursuant to the Settlement Agreement or order of the Court, shall be nonrefundable if, for any reason, the Settlement Agreement is terminated according to its terms or is not finally approved by the Court. Unless the Parties reach agreement otherwise, costs of notice exceeding $250,000 will require Court approval.

7.    <u>Motion for Final Approval and Entry of Final Judgment</u>. If the Court grants Preliminary Approval and preliminarily certifies the Settlement Class, then CIIPPs, through Putative Interim Co-Lead Counsel — in accordance with the schedule set forth in the Court's Preliminary Approval — shall submit to the Court a separate motion for Final Approval of this Settlement Agreement by the Court. A reasonable time in advance of submission to the Court, the papers in support of the motion for Final Approval shall be provided by Putative Interim Co-Lead Counsel to Tyson for its review. To the extent that Tyson objects to any aspect of the

motion, it shall communicate such objection to Putative Interim Co-Lead Counsel and the parties shall meet and confer to resolve any such objection. The motion for Final Approval shall seek entry of an order and Final Judgment:

a.  Finally approving the Settlement Agreement as being a fair, reasonable, and adequate settlement for the Settlement Class within the meaning of Federal Rules of Civil Procedure 23, and directing the implementation, performance, and consummation of the Settlement Agreement and its material terms and conditions, without material modification of those terms and conditions;

b.  Determining that the Settlement Class Notice constituted the best notice practicable under the circumstances of this Settlement Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

c.  Dismissing the Action with prejudice as to Tyson in all class action complaints asserted by CIIPPs without further costs or fees;

d.  Discharging and releasing the Tyson Released Parties from all Released Claims;

e.  Enjoining CIIPPs from suing any of the Tyson Released Parties for any of the Released Claims;

f.  Filing a declaration prepared by counsel for Tyson confirming that Tyson has provided the appropriate notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1711 *et seq.* ("CAFA");

g. Reserving continuing and exclusive jurisdiction over the Settlement Agreement for all purposes; and

h. Determining under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to Tyson shall be final and appealable and entered forthwith.

The Parties shall use all best efforts to obtain Final Approval of the Settlement Agreement without modification to any of its material terms and conditions.

8. <u>Escrow Account</u>.  The Escrow Account shall be administered by Putative Interim Co-Lead Counsel for the CIIPPs and Settlement Class under the Court's continuing supervision and control pursuant to the Escrow Agreement.

9. <u>Settlement Consideration</u>.  In consideration for the release of Released Claims, the dismissal of the Action, and the other material terms and conditions herein, within fourteen (14) days of the Court's grant of Preliminary Approval or after Putative Interim Co-Lead Counsel have provided wire instructions to Tyson, whichever occurs later, Tyson shall pay or cause to be paid the Settlement Fund of $1,750,000 (one million, seven hundred and fifty thousand U.S. dollars) into the Escrow Account.

10. <u>Cooperation</u>.  Cooperation by Tyson is a material term of the Settlement Agreement and shall include the following categories of cooperation.  Tyson will make reasonable efforts to locate and produce the below categories of documents to the extent they are within Tyson's possession, custody and control and can be located based on a reasonable search.  Tyson cannot guarantee its possession of all such documents.

a. <u>Proffers / Employee Interviews</u>

i.   Attorney proffers on the functioning of Agri Stats, its inputs, its meaning, its use within Tyson, and its use in the industry;

ii.  Any proffers given to any plaintiff in matters substantially similar to this one; and

iii. At a future point, actual interviews and depositions with the two employees who dealt most with Agri Stats. Tyson further agrees to make additional employees available upon reasonable request.

b.   Production of <u>Centralized Documents:</u>

i.   Tyson's contracts with Agri Stats/EMI related to Turkey;

ii.  Reports received by Tyson from Agri Stats/EMI related to Turkey performance, sale price, and costs;

iii. Any presentations made by Agri Stats/EMI to Tyson regarding the Turkey industry; and

iv.  Any documents produced to a State Attorney General or DOJ regarding an investigation into the Turkey industry, or any information.

c.   Production of <u>Structured Data:</u>

i.   Reasonably immediate production of transaction data responsive to Plaintiff RFP Nos. 50 and 51, which are:

1. For the time period from January 1, 2002 through the present,

Structured Data[3] regarding the terms of all purchases, sales, trades, exchanges, or swaps of Turkey between Settling Defendant and any other Turkey Integrator,[4] including any contracts, co-packing agreements, joint ventures, and/or agreements, whether formal or informal.

2. For the time period from January 1, 2002 through the present, Structured Data sufficient to show, for each U.S. Turkey sale, the categories of information listed below, and Documents sufficient to understand all data fields, codes, or other fields on the invoice. Plaintiffs request this information in the most disaggregated form (meaning at the transactional level, not aggregated by month or quarter) in which it is kept, and Settling Defendant should produce the data in a comma-delimited text file (*e.g.*, a file with a file extension of .csv or .txt). If Settling Defendant maintains separate or distinct sets of such data for internal purposes, or any other purpose, Plaintiffs' request is for each separate set of data for the categories of information listed below.

   a. the terms of each sale;

---

[3] "Structured Data" or "Structured Database" refers to data stored in a fixed field within a database or other structured record or file according to specific form and content rules as defined by each field. Structured Databases include, but are not limited to, Access, Oracle, SQL Server data, and SAP.

[4] "Turkey Integrator" means Defendants (except Agri Stats) and any non-Defendant entity that raises, buys, slaughters, and processes turkeys to make Turkey.

b.   the invoice number;

c.   the purchase order;

d.   the location from which the Turkey was shipped;

e.   the customer's name, phone numbers(s), address(es), email address(es), including the identity of the customer that was billed and the location to which the Turkey was shipped;

f.   the date Settling Defendant shipped the Turkey, the date Settling Defendant billed for the Turkey, and the date the customer took delivery;

g.   the grade, cut, product form, and/or type of Turkey, including any product, numbers, unique purchaser-specific identifier, any description of characteristics, and the product descriptions sold for each transaction;

h.   the quantity (and units of measure) for each sale;

i.   all pricing information concerning the sale, including shipping, tax, or similar charges, and the gross and net unit price for each item in the sale;

j.   the currency in which the sale was billed and paid;

k.   any discounts, rebates, credits, freight allowances, returns, free goods, and/or services or any other pricing adjustment for each sale, with sufficient information to attribute these adjustments to individual sales;

15

l.   if a resale, the Supplier of each Turkey sold in connection with each sale;

m.   the price Settling Defendant paid Settling Defendant's Supplier for each type of Turkey sold in connection with each sale, including gross and net aggregate and per-unit prices;

n.   any fixed or variable cost or costs of goods sold concerning the sale (including freight charge and transportation cost, sales and distribution cost, raw materials, intermediates, marketing or sales cost, and any other cost attributed or allocated to the sale);

o.   for any sale or purchase from another Turkey Integrator, Electronic Data Interchange fields for which the user can freely enter text, such as "comments" or similar fields;

p.   any other data available in Settling Defendant's databases concerning the purchase, sale or distribution of the Turkey for each sale.

d.   <u>Custodial Documents:</u>

i.   Tyson will run agreed upon search terms on the custodial documents of two agreed--upon document custodians;

ii.   Tyson will produce direct communications between competitors relating to Turkey, to be identified by searching co-defendant email

domain names across the emails of identified custodians.

e.  Authentication:

i.  Tyson agrees to use reasonable efforts to authenticate documents produced in the Action where the facts indicate that the documents are authentic.

Beyond the information to be produced by Tyson in discovery in the Action and in the Settlement Agreement, Tyson will produce to CIIPPs any documents it produces to any other party in connection with this litigation.

f.  Most-Favored Nation and Coordination Between the Classes: Tyson agrees to provide to the CIIPPs any documents, proffers, or other information provided to the Direct Purchaser Plaintiffs ("DPPs") in connection with a Settlement Agreement between DPPs and Tyson, and to provide to CIIPPs any documents, proffers, or other information provided to other plaintiffs in litigation involving related allegations of anticompetitive conduct in the market for Turkey.  The CIIPPs in turn agree to make reasonable best efforts to coordinate with the DPPs on the scheduling of proffers and employee interviews to avoid duplication of efforts and to minimize business disruption to Tyson.

11.  Qualified Settlement Fund.  The Parties agree to treat the Settlement Fund as being at all times a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.  In addition, Putative Interim Co-Lead Counsel shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 11, including the relation-back election (as defined in Treas. Reg.

17

§ 1.468B-1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Putative Interim Co-Lead Counsel to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Settlement Funds being a "Qualified Settlement Fund" within the meaning of Treas. Reg. § 1.4688-1. Putative Interim Co-Lead Counsel shall timely and properly file all information and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. Tyson shall not be responsible for the filing or payment of any taxes or expenses connected to the Qualified Settlement Fund.

12.  <u>Distribution of Settlement Fund to Settlement Class</u>. Members of the Settlement Class shall be entitled to look solely to the Settlement Fund for settlement and satisfaction of the Agreement or in connection with any of the Released Claims against the Tyson Released Parties, and shall not be entitled to any other payment or relief from the Tyson Released Parties. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. CIIPPs, members of the Settlement Class, and their counsel will be reimbursed solely out of the Settlement Fund for all expenses including, but not limited to, attorneys' fees and expenses and the costs of notice of the Settlement Agreement to potential members of the Settlement Class. Tyson and the other Tyson Released Parties shall not be liable for any costs, fees, or expenses of any of CIIPPs' and Putative Interim Co-Lead

Counsel's attorneys, experts, advisors, or representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund.

13.     Fee Awards, Costs and Expenses, and Service Awards to CIIPPs:   Subject to Putative Interim Co-Lead Counsel's sole discretion as to timing, Putative Interim Co-Lead Counsel will apply to the Court for a fee award – plus expenses and costs incurred – and service awards to the CIIPPs to be paid from the proceeds of the Settlement Fund.  Putative Interim Co-Lead Counsel may in its sole discretion apply to the Court to use some or all of the settlement proceeds, after notice fees, in paying future expenses in this litigation. Funds will be under control of the Court. Tyson shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or awards beyond the Settlement Fund.

14.     Release.  Upon Final Judgment, the Releasing Parties shall be deemed to have, and by operation of law and of the judgement shall have fully, finally and forever completely compromised, settled, released, acquitted, resolved, relinquished, waived, and discharged the Tyson Released Parties from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now have, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, or damages arising from or in connection with any act or omission through the date of Preliminary Approval relating to or referred to in the Action or arising from the factual predicate of the Action (the "Released Claims").  Notwithstanding the above, "Released Claims" do not

include (i) claims asserted against any Defendant or co-conspirator other than the Tyson Released Parties or (ii) any claims wholly unrelated to the allegations in the Action that are based on breach of contract, any negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, or securities claim, breach of warranty, or product defect. This reservation of claims set forth in (i) and (ii) of this paragraph does not impair or diminish the right of the Tyson Released Parties to assert any and all arguments and defenses to such claims, and the Parties agree that all such arguments and defenses are preserved. During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any and all Released Claims against any and all of the Tyson Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the Tyson Released Parties arising out of or relating to the Released Claims.

15. <u>Further Release</u>. In addition to the provisions of Paragraph 14, the Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including without limitation 20-7-11 of the South Dakota Codified Laws (providing "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR"). Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Paragraph 14, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Paragraph 14, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual and not a mere recital.

16.    <u>Covenant Not to Sue</u>.  CIIPPs and each Settlement Class Member covenant not to sue any of the Tyson Released Parties for any transaction, event, circumstance, action, failure to act, or occurrence of any sort or type arising out of the Released Claims, including, without limitation, seeking to recover damages relating to any of the Released Claims.  This paragraph shall not apply to any action to enforce this Settlement Agreement.

17.    <u>Non-Disparagement</u>: The Parties agree they will not disparage one another or their respective claims or defenses, such as by making public statements that disparage either of the parties or their conduct in connection with the Action, and instead will confine their public

comments to essentially the following: "The parties have agreed to resolve this matter. Tyson has not admitted any liability and continues to deny the allegations in Plaintiffs' complaint, while Plaintiffs believe they would have prevailed."

18.     This Settlement Agreement shall not be construed as an admission of liability, or used as evidence of liability, for any purpose in any legal proceeding, claim, regulatory proceeding, or government investigation.

19.     This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein when executed.

20.     <u>Reduction / Termination:</u> If all Settlement Class members that purchased Turkey manufactured by Tyson that opt out of the Settlement Class made purchases of Turkey manufactured by Tyson comprising, in aggregate, more than 15% of Tyson's sales to the Settlement Class members that purchased Turkey manufactured by Tyson during the period January 1, 2010 through January 1, 2017, the Settlement Amount shall be reduced proportionately for each additional percentage point of sales to Settlement Class members that opt out beyond this 15% threshold. To resolve any doubt, if Settlement Class members that purchased Turkey manufactured by Tyson that opt out of the Settlement Class made purchases of Turkey manufactured by Tyson representing 20% of Tyson's sales to Settlement Class members that purchased Turkey manufactured by Tyson, the settlement would be reduced by 5%. If Settlement Class members that purchased Turkey manufactured by Tyson during the period January 1, 2010 through January 1, 2017 that opt out of the Settlement Class made purchases of Turkey manufactured by Tyson comprising, in aggregate, more than 30% of Tyson's sales to Settlement Class members that purchased Turkey manufactured by Tyson during this time period, Tyson will have the sole discretion to rescind the Settlement Agreement. However, sums expended for notice

will not be refunded. It is agreed that this long-form settlement agreement and the parties' Term Sheet shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing the terms thereof. Tyson shall bear the burden of establishing the amount of Settlement Class opt out purchasers. In connection with meeting its burden, Tyson can rely on all available relevant evidence and its good faith reasonable estimates. If the Parties dispute the relevant amount of opt out purchases, or whether Tyson has met its burden, the parties agree to mediate this dispute with Daniel Weinstein or another independent and neutral mediator to be selected in good faith by mutual agreement of Parties (the "Mediator"). The Mediator's determinations shall be binding on the Parties.

21. <u>Effect of Disapproval</u>. If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if the Court does not enter Final Approval as provided for in Paragraph 7 herein, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for Final Judgment do not occur as set forth in Paragraph 1(k) of this Settlement Agreement, then this Agreement may be rescinded, cancelled, or terminated by Tyson or CIIPPs on behalf of the Settlement Class. If rescinded, cancelled, or terminated, this Settlement Agreement shall become null and void, and, with the exception of any Settlement Funds used for notice purposes pursuant to Paragraph 6(c), in the event the settlement is not preliminarily or finally approved by the Court, all other funds in the Escrow Account shall be returned to Tyson and the Parties' position shall be returned to the status quo ante. In no way shall CIIPPs have the right to rescind, cancel or terminate this Settlement Agreement if the Court fails or refuses to grant any requested attorney's fees, any costs, or any awards to CIIPPs.

22.    <u>Choice of Law and Dispute Resolution</u>.  Any disputes relating to this Settlement Agreement or the Confidential Letter Agreement shall be governed by Illinois law without regard to conflicts of law provisions, and any and all disputes regarding this Settlement Agreement or the Confidential Letter Agreement will be mediated in good faith with Judge Daniel Weinstein (ret.) before any suit, action, proceeding or dispute may be filed in the Court pursuant to Paragraph 23 below.

23.    <u>Consent to Jurisdiction</u>.  The Parties and any Releasing Parties hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the Confidential Letter Agreement, or the applicability of this Settlement Agreement or the Confidential Letter Agreement.  Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 14-16, including but not limited to, any suit, action, or proceeding in which the provisions of Paragraphs 14-16 are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action, or proceeding arising out of or relating to this Settlement Agreement.  In the event that the provisions of Paragraphs 14-16 are asserted by any Tyson Released Party as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding, it is hereby agreed that such Tyson Released Party shall be entitled to a stay of that suit, action, or proceeding until the mediation required by Paragraph 22 is complete and, if the matter is not resolved by mediation, the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Parties and any Releasing Parties irrevocably waive

and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the in personam jurisdiction of the Court. Nothing shall be construed as a submission to jurisdiction for any purpose other than enforcement of this Settlement Agreement and the Confidential Letter Agreement.

24. <u>Class Action Fairness Act</u>. Within ten (10) days of filing of this Settlement Agreement in court with the above mentioned motion for Preliminary Approval, Tyson, at its sole expense, shall serve upon appropriate Federal and State officials all materials required pursuant to CAFA, and shall confirm to CIIPPs' Putative Interim Co-Lead Counsel that such notices have been served.

25. <u>Costs Relating to Administration</u>. The Tyson Released Parties shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Funds.

26. <u>Binding Effect</u>. This Settlement Agreement constitutes a binding, enforceable agreement as to the terms contained herein. This Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, and heirs of the Parties, Settlement Class Members, the Releasing Parties, and the Tyson Released Parties. Without limiting the generality of the foregoing, upon certification of the Settlement Class and Final Approval, each and every covenant and agreement herein by the CIIPPs shall be binding upon all members and potential members of the Settlement Class and Releasing Parties who have not validly excluded themselves from the Settlement Class.

27. <u>Sole Remedy</u>. This Settlement Agreement shall provide the sole and exclusive remedy for any and all Released Claims against any Tyson Released Party, and upon entry of

Final Judgment, the Releasing Parties shall be forever barred from initiating, asserting, maintaining, or prosecuting any and all Released Claims against any Tyson Released Party.

28.    <u>Counsel's Express Authority</u>.  Each counsel signing this Settlement Agreement on behalf of a Party or Parties has full and express authority to enter into all of the terms reflected herein on behalf of each and every one of the clients for which counsel is signing.

29.    It is agreed that this Settlement Agreement shall be admissible in any proceeding for establishing the terms of the Parties' agreement or for any other purpose with respect to implementing or enforcing this Settlement Agreement.

30.    <u>Notices</u>.  All notices under this Settlement Agreement shall be in writing.  Each such notice shall be given either by: (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express or similar overnight courier, and, in the case of either (a), (b) or (c) shall be addressed:

If directed to CIIPPs, the Settlement Class, or any member of the Settlement Class, to:

Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
jonc@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cuneolaw.com

-and-

Sarah Sterling Starns
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 399095
dbarrett@barrettlawgroup.com

If directed to the Tyson, to:

Tiffany Rider Rohrbaugh
AXINN, VELTROP & HARKRIDER LLP

1901 L Street NW
Washington, DC 20036
trider@axinn.com

-and-

Eli J. Glasser
Executive Counsel, Antitrust and Global Competition
Tyson Foods, Inc.
2200 Don Tyson Parkway
Springdale, AR 72762
Eli.Glasser@Tyson.com

or such other address as the Parties may designate, from time to time, by giving notice to all

parties hereto in the manner described in this paragraph. The Parties shall also provide courtesy

copies of all notices by electronic mail.

31. <u>No Admission</u>. Whether or not Preliminary Approval is granted, Final Judgment

is entered, or this Settlement Agreement is terminated, the Parties expressly agree that this

Settlement Agreement and its contents, and any and all statements, negotiations, documents, and

discussions associated with it, are not and shall not be deemed or construed to be an admission of

liability or wrongdoing by any Party or Tyson Released Party.

32. <u>No Unstated Third-Party Beneficiaries</u>. No provision of this Agreement shall

provide any rights to, or be enforceable by, any person or entity that is not a Tyson Released

Party, CIIPP, member of the Settlement Class, or Putative Interim Co-Lead Counsel.

33. <u>No Party is the Drafter</u>. None of the Parties hereto shall be considered to be the

drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

law, or rule of interpretation or construction that would or might cause any provision to be

construed against the drafter hereof.

34. <u>Amendment and Waiver</u>. This Settlement Agreement shall not be modified in any

respect except by a writing executed by the Parties, and the waiver of any rights conferred

hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any particular breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement. This Agreement does not waive or otherwise limit the Parties' rights and remedies for any breach of this Agreement.  Any breach of this Agreement may result in irreparable damage to a Party for which such Party will not have an adequate remedy at law.  Accordingly, in addition to any other remedies and damages available, the Parties acknowledge and agree that the Parties may immediately seek enforcement of this Settlement Agreement by means of injunction, without the requirement of posting a bond or other security.

35.     Execution in Counterparts.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute a single agreement.  Facsimile or Electronic Mail signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement and filed with the Court.

36.     Integrated Agreement.  This Settlement Agreement comprises the entire, complete, and integrated agreement between the Parties, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between the Parties.  The Parties agree that this Settlement Agreement may be modified only by a written instrument signed by the Parties and that no Party will assert any claim against another based on any alleged agreement affecting or relating to the terms of this Settlement Agreement not in writing and signed by the Parties.

37.     Voluntary Settlement.  The Parties agree that this Settlement Agreement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after

consultation with competent counsel and the participation of a neutral mediator, and no Party has entered this Settlement Agreement as the result of any coercion or duress.

38.    Confidentiality.  The Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation.  However, Tyson and CIIPPs can inform other parties to this Action that they have reached a settlement agreement, the amount of the settlement, and the cooperation provided for in this Settlement Agreement.

39.    Irrespective of any term in this Agreement, it is expressly agreed that nothing in this Agreement prohibits CIIPPs and CIIPP counsel in ongoing litigation of the Action from establishing a conspiracy under the Sherman Act and the other state laws under which the CIIPPs have brought suit, including discovering and introducing evidence of Settling Defendant as a co-conspirator in the Action or from effecting the cooperation provisions herein.

40.    Irrespective of any term in this Agreement, the parties agree that (1) CIIPPs and CIIPP counsel will not share any material learned pursuant to Paragraph 10 of this Agreementff with any other plaintiff or plaintiff group in related actions (unless authorized by Tyson) but (2) nothing in this Agreement otherwise prevents CIIPPs from continuing to jointly prosecute this case and utilizing any work product developed in this matter.

IN WITNESS WHEREOF, the Parties, individually or through their duly authorized representatives, enter into this Settlement Agreement on the Execution Date.


_____          Dated:  June 15, 2021
BLAINE FINLEY

Jonathan W. Cuneo
Blaine Finley
Evelyn Li
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
T:  (202) 789-3960
jonc@cuneolaw.com
bfinley@cuneolaw.com
evelyn@cuneolaw.com


_____          Dated:  June 15, 2021
SARAH STERLING STARNS

John "Don" Barrett
Katherine Barrett Riley
Sarah Sterling Starns
BARRETT LAW GROUP, P.A.
404 Court Square
Lexington, Mississippi 399095
T:  (662) 834-2488
F: (662) 834-2628
dbarrett@barrettlawgroup.com
kbriley@barrettlawgroup.com
sstarns@barrettlawgroup.com



*Putative Co-Lead Counsel for Commercial and*
*Institutional Indirect Purchaser Plaintiffs*

Dated:    June 8, 2021

Tiffany Rider Rohrbaugh
Rachel J. Adcox
Lindsey Strang Aberg
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 469-3550
F: (202) 912-4701
trider@axinn.com
radcox@axinn.com
lstrang@axinn.com

Jarod G. Taylor
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone:  860.275.8100
jtaylor@axinn.com

Jordan Matthew Tank
Sahrish Moyeed
LIPE LYONS MURPHY NAHRSTADT & PONTIKIS, LTD
230 West Monroe Street, Ste 2260
Chicago, IL 60606
T: (312) 702-0586
F: (312) 726-2273
jmt@lipelyons.com
sm@lipelyons.com

*Counsel for The Hillshire Brands
Company, Tyson Foods, Inc., Tyson
Fresh Meats, Inc., Tyson Prepared
Foods, Inc.*